EMMA DARLING, APPELLANT, v. RHODA E. ARTHUR AND OTHERS, RESPONDENTS.

*Will—what is a sufficient publication thereof.*

Franklin O. Arthur came, with his will in his pocket, to the house of his brother, Jeremiah, who lived with his daughter Isabel, and said "Jeremiah, I want you and Bell to witness my will." He then asked for a pen and ink, put his hand in his pocket, took out the will, and signed it. It was then signed by the brother and daughter under the usual attestation clause, and he then put it in his pocket and carried it away.

*Held*, that there was a sufficient publication of the will.

APPEAL from a decree of the surrogate of Suffolk county, admitting to probate the last will and testament of Franklin O. Arthur, deceased.

*Roger A. Pryor*, for the appellant.

*Thomas Young*, for the respondents.

DYKMAN, J.:

It is demanded of every testator when he subscribes a will, or makes an acknowledgment of its execution to the witnesses, to

declare the instrument so subscribed to be his last will and testament. This declaration is called the publication of the will, and is one of the safeguards which the law has thrown around testators with the view of preventing the execution of wills under the supposition that they are other instruments. Any communication to the witnesses, either by word or deed, or both, which renders it certain that the testator intends the instrument which he executes to take validity and effect as a last will and testament, will satisfy this requirement of the statute, the sole end and aim being to secure freedom and certainty. In *Coffin* v. *Coffin* (23 N. Y., 9), one of the witnesses in the presence of the other said to the testator, " do you request me to sign this as your will, as a witness," and the testator said, " yes." The will was lying before them. This was the only publication of the will, and it was held sufficient by the Court of Appeals.

In this case, the testator came to the house of his brother Jeremiah, who had a daughter, named Isabel, with this will in his pocket, and said to his brother, " Jeremiah, I want you and Bell to witness my will." He then asked for a pen and ink, and put his hand in his pocket, and took out the will, and sat down and signed it with the pen and ink that was furnished him by the daughter; then the brother and daughter signed the will as witnesses, and he put it in his pocket and carried it away. The will has the usual attestation clause which was signed by the witnesses. The only question raised has respect to the publication, which it is claimed was insufficient. We do not think it was. We have examined all the cases to which reference was made by counsel, and many others, and within them all this publication must be held sufficient. The testator knew that the instrument was his will; no different instrument was imposed upon him. He came to the witnesses and said, " I want you to witness my will," and laid it before them at the same time. The words used, coupled with the act, were equivalent to a declaration that the paper produced was his will, and he requested the witnesses to sign it as such. If the testator had said in words, " This is my will, and I want you two to sign it as witnesses," there would be no question; and yet what was said and done amounted to so much and nothing less. When he said, " I

want you to witness my will," and produced it, it was the same in effect as saying, "I want you to witness my will, and here it is."

The decree of the surrogate, admitting the will to probate, should be affirmed, with costs.

BARNARD, P. J., and GILBERT, J., concurred.

Decree of surrogate affirmed, with costs.